FEDCO, INC. and the Travelers Indemnity Company, Appellants,

v.

UNITED STATES of America ex rel. Fred O. JONES, Appellee.

No. 19031.

United States Court of Appeals Ninth Circuit.

Oct. 26, 1964.

Eugene I. Annis, Shields, Reiley & Annis, Leo H. Fredrickson, Fredrickson, Maxey & Bell, Spokane, Wash., for appellants.

George R. Nethercutt, Spokane, Wash., for appellee.

Before ORR, HAMLEY, and BROWNING, Circuit Judges.

ORR, Circuit Judge.

The government of the United States installed an underground missile facility at Larsen Air Force Base in the state of Washington. Shortly after its completion many leaks in the tunnel complex developed. The government employed welding in an effort to stop the leaks. This proved unsuccessful. At the time there was in existence a comparatively new chemical "grouting" process which offered some promise in stopping the leaks. The Army Corps of Engineers decided to employ this process and entered into a contract with appellant, Fedco, Inc., to perform some "grouting" work. The contract price was $87,537.98.

Said contract contemplated that a qualified chemical grouting engineer should be provided by Fedco to supervise the entire grouting operation. Pursuant thereto, Fedco employed appellee, Fred O. Jones, acknowledged to be qualified. Under the terms of his employment Jones was to perform "all services required of Chemical Grouting Engineer" under Fedco's contract with the government. He was to receive a fixed sum of $12,500 for his services.

On May 10, 1962, the grouting operation commenced. It proceeded effectively and smoothly. During the time that the work was in progress several modifications of the contract were made, the first on July 27, 1962. This provided for acceleration of the work under the contract, moving the final completion date up to August 15, 1962. For this modification Fedco was to receive an estimated additional $12,000 compensation. On August 1, August 16, and August 24, 1962, changes comprising a second modification were made. This provided for additional grouting work, and provided that the grouting operation be put upon an "around the clock" basis. The second modification increased the contract price by another estimated $25,391.40. A third modification was made August 29, 1962; this increased the contract price by an estimated $20,983.85.

On July 16, 1962, Jones—having knowledge that further grouting work would be required—sent a letter to Fedco, wherein he offered his services in the performance of additional work at his standard fee of $18.75 per hour plus expenses.

The grouting work on the corrugated tunnels, contemplated by the original contract, was completed about August 21, 1962. Prior to that time, however, there was some grouting done on several neoprene seals in the missile complex. Subsequent to August 21 work continued on other neoprene seals, and on other repairs provided for in the modifications.

Work under the contract between the government and Fedco, including the modifications, was completed on September 12, 1962. Subsequently, an additional contract was entered into by Fedco and the government whereby Fedco was to sell the grouting machinery to the government and was to conduct a "school" relating to the use of this equipment. The school was to be conducted by Fred O. Jones. This contract terminated September 30, 1962.

During the course of his employment Jones furnished all reports required of him under the original contract, as modified. Weekly reports were furnished until Jones was notified that the government no longer desired them. At the conclusion of his employment, Jones delivered to Felco a detailed final report—apparently not required by the government—with a summary and recommendations. Some time after the grouting work and the school instruction had been completed, the government requested of Fedco a final compilation of "reproducible weekly reports." These were compiled by Fedco from daily reports kept by the grouting engineer and his assistant on the job, at a cost, according to Fedco, of $1300. The

evidence as to whether these reports were required by the government to be made by the grouting engineer, and as to whether Fedco requested Jones to complete said reports, is conflicting.

On September 15, 1962, in a letter to Fedco, Jones requested payment of amounts still due him. On October 18, 1962, Fedco sent a letter to Jones denying that it was indebted to Jones in any amount for work done before August 30, 1962, the final termination date of the original contract. The letter also stated that Fedco would deduct from the amount due Jones the amount paid to an assistant hired by Fedco to assist Jones.

On November 13, 1962, Jones entered into a contract with the government to prepare a complete report on the chemical grouting at the missile site. This job-history report was made partly from knowledge he had acquired while on the grouting job; but the evidence discloses that it was compiled mainly from reports made to the government by Fedco relating to the grouting job. These latter reports were the property of the United States Government. Jones received $4925 for said job-history report.

Pursuant to the refusal of Fedco to pay Jones the balance claimed by him, the United States, for the use of Jones, brought suit in the United States District Court for the Eastern District of Washington under the Miller Act, 40 U.S.C. § 270b, seeking to recover the amounts claimed under the original contract of employment, and for extra work done. The trial court rendered judgment in favor of Jones in the sum of $11,759.21, plus interest and costs.

■ 1) Appellant contends on appeal, first, that a charge of $4925 should have been allowed against Jones' claim, because the compensation paid Jones by the Corps of Engineers for compilation of a final job-history report should have been credited to Fedco. This contention is predicated upon the claim that Jones' contract with the government was a breach of his professional services agreement with Fedco. Appellant contends

further that this was a violation of appellee's fiduciary duty to his employer. We find these contentions to be without merit; the trial court properly denied the claimed offset of $4925.

We conclude that Jones was in a position to enter into, and properly did enter into, the contract with the government to furnish the reports which he made after termination of his contract with Fedco. We find nothing in the original agreement which either expressly or impliedly prohibits appellee from so doing. The trial court's finding that the "obligations of Fred O. Jones under said professional services contract terminated upon completion of the job" is substantially supported by the evidence.

Appellant contends that both Jones and Fedco had anticipated, at the time of entering into the professional services agreement, that Fedco would enter into a later contract with the government for a job-history report. Further, appellant contends that a part of the consideration for appellee's $12,500 fee was that he refrain from entering into any such contract with the government. Some testimony of the President of Fedco to this effect appears in the record. There is, however, substantial evidence contra, which the trial court evidently acted upon.

■ Appellant points to the following provision contained in the professional services agreement and asserts that it is "direct and unambiguous" in support of its contentions:

"Any records or reports made or required to be made by the mentioned contract, or any modifications thereof, shall be made over the title of Fedco, Inc. * * *"

We agree that the clause is direct and unambiguous; but it does not support appellant's contention. The clause can only reasonably be read to mean that records required to be made by the contract shall carry the name of Fedco.

Appellant's argument that Jones violated his agency by entering into a subsequent contract with the government has no validity. Here the employment rela-

tionship had terminated at the time Jones made his contract with the government. There is no express provision in the professional services agreement creating in Jones a fiduciary duty extending beyond the termination of employment. And to hold that an implied duty not to enter into a later contract exists would, under the facts of this case, be unreasonable.

■ A duty will be imposed upon an ex-employee, in some cases, where the employee in some way uses, to his advantage and to the disadvantage of his ex-employer, information of a special nature that is gained during the course of employment. This is not such a case. The information which Jones used was obtained mainly from records which were the property of the government. It is true that some information gained by Jones while acting as a grouting engineer in the employ of Fedco was useful in making the reports. But this is not determinative. Any expert knowledge that Fedco possessed in the field of grouting was provided by Jones; indeed, Fedco's obtaining the original contract was dependent upon securing the services of someone with the qualifications Jones possessed. The record discloses that only three people in the country were certified as chemical grouting engineers by the manufacturer of the grout used. Hence, when Jones drew upon his experience as a grouting engineer—including experience gained while working for Fedco on the missile site—this did not constitute a use of special or of inside information by an ex-employee of a type that the law forbids.

Furthermore, the trial court found that no damage to Fedco was shown. This finding is supported by substantial evidence.

■ 2) Prejudicial error is charged in that the trial court failed to offset against Jones' claim $2100 paid to Jones' assistant, Gary Riley. Appellant's contention is that Jones had contracted to "perform all services required of Chemical Grouting Engineer," that Jones later persuaded appellant to engage Gary Riley to assist him, that the work done by Riley was work that Jones had contracted to perform himself, and that, therefore, the amount paid Riley should be deducted from Jones' award. The trial court found that there was no understanding or contract between Jones and Fedco requiring Jones to pay the salary of Gary Riley. This finding is amply supported by substantial evidence.

■ 3) Appellant urges that $1300 be deducted from appellee's compensation for the reason that "appellant was required to expend $1300 to produce reports which were the obligation of the appellee to make." The court below found that the appellee, Fred O. Jones, made all reports required under the contract between Fedco and the government, and that the obligations under the professional services contract terminated upon completion of the job. Again, the record discloses that these findings are supported by substantial evidence.

■ 4) Finally, appellant contends that the trial court awarded too large an amount on appellee's claim for compensation for extra work—that is, work not included in the original professional services agreement.

The trial court found, in effect, that the professional services agreement did not encompass work on the neoprene seals. The agreement is tied to the original contract between Fedco and the government, and we conclude from an examination of the specifications of that contract that the neoprene seals were not to be grouted. The contract provides in part:

"This section covers chemical grouting of the laps of steel plates in the tunnels, exclusive of those which are located under the concrete fill at invert of the Type 'A' tunnels, Utility Tunnels, and chemical grouting of the joint between the rolled steel sections and concrete base slab in the LOX Tank Bays, complete."

The specification sheet gives no indication that there are to be drill holes made or

grouting done in the seals. Further, subsequent contract modifications, made before any of the alleged extra work began, specifically included grouting of the seals, indicating that they were not included in the original contract. Other evidence of substance in the record supports this conclusion, as well.

Jones testified that he spent 158 hours between the dates of August 1, 1962, and August 30, 1962, grouting several neoprene seals. It is clear that this was work that he was not obligated by his original contract to perform. The trial court so found when it awarded appellee $18.75 per hour for the 158 hours. It appears, however, that some confusion exists in Finding of Fact No. 6, relating to this question.

Finding No. 6 states that the extra work of Jones was accepted by Fedco "from August 22, 1962, to August 30, 1962, totaling 158 hours." Of the 158 hours of work in question, however, 36 hours represented work done on three neoprene seals from August 1 to August 22, 1962. We are convinced from a reading of the record that the use of the date of August 22 was error; the finding should have read, in part: "from August 1, 1962, to August 30, 1962, totaling 158 hours."

Since all work done on the neoprene seals during the month of August, 1962, was outside the scope of the professional services agreement, it is of no consequence that some of the work on the seals was performed before the work required under the agreement was completed on August 21, 1962; and it follows that it is of no consequence that the entire 158 hours of work in question were performed before the "not later than August 30, 1962" job completion date incorporated by reference into the professional services agreement. Fedco had a claim only to Jones' services in regard to the specific grouting work mentioned in the original contract, and not an exclusive right to all of Jones' services up until the completion of that contract.

The judgment is affirmed.